**NOT FOR PUBLICATION**

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

DEC 27 2023

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

KENY MARIA FLORES-AVILA; CELIA
ELIZABETH RAMIREZ-FLORES,

Petitioners,

v.

MERRICK B. GARLAND, Attorney
General,

Respondent.

No. 22-1277

Agency Nos.
A213-137-879
A213-137-880

MEMORANDUM[*]

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted December 6, 2023
Pasadena, California

Before: WARDLAW and BUMATAY, Circuit Judges, and KENNELLY, District
Judge.[**]
Dissent by Judge BUMATAY.

Keny Maria Flores-Avila and her daughter, Celia Elizabeth Ramirez-Flores

("Petitioners"), natives and citizens of El Salvador, petition for review of the Board

---

[*]     This disposition is not appropriate for publication and is not precedent
except as provided by Ninth Circuit Rule 36-3.

[**]     The Honorable Matthew F. Kennelly, United States District Judge for
the Northern District of Illinois, sitting by designation.

of Immigration Appeals' ("BIA") decision affirming the Immigration Judge's ("IJ") denial of their applications for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). We have jurisdiction under 8 U.S.C. § 1252. We grant the petition and remand for further proceedings.

1. The agency's lack-of-nexus finding is not supported by substantial evidence in the record. The BIA adopted the IJ's conclusion that the group of gang members who broke into Flores-Avila's home and threatened her were motivated exclusively by their desire to use her and her daughter to further their drug-trafficking scheme. The evidence compels the contrary conclusion: that the men were motivated, at least in part, by Flores-Avila's ties to her father, a former Mara Salvatrucha ("MS") gang member. Our precedent is clear that "economic extortion on the basis of a protected characteristic can constitute persecution," *Ayala v. Sessions*, 855 F.3d 1012, 1020 (9th Cir. 2017), and we have long recognized that "persecutors are hardly likely to provide their victims with affidavits" regarding their motives, *Bolanos-Hernandez v. INS*, 767 F.2d 1277, 1285 (9th Cir. 1984). Moreover, "compelling circumstantial evidence" of motive "is sufficient." *Gafoor v. I.N.S.*, 231 F.3d 645, 650 (9th Cir. 2000).

Flores-Avila's testimony, deemed credible by the IJ, established that her father was a former member of the MS gang in El Salvador who was murdered in broad daylight two weeks after the gang gave him an ultimatum: "that he either

2                                                                                    22-1277

join[] them again or he was going to pay with his own life."

In the wake of her son's death, Flores-Avila's grandmother filed a police report and collected information from neighbors to pass along to the police. Shortly after telling her granddaughter that "they were about to capture the perpetrators," Flores-Avila's grandmother was shot and killed while walking home from the market.

Fearing for her safety following these murders, Flores-Avila moved to a different town, controlled by a rival gang. Living carefully "under closed doors," Flores-Avila avoided any threats from the MS gang for five years. But on August 20, 2017 in the middle of the night, four or five armed men broke into Flores-Avila's home, where she was alone with her infant daughter. Based on their tattoos, she recognized them as MS gang members, as opposed to the rival gang that controlled her city. With a gun to infant Celia's head, the gang members demanded that Flores-Avila cooperate in their drug-trafficking endeavors by permitting them to traffic drugs in her daughter's diaper. Flores-Avila asked for time to think it over, but the gang members said "you know what we did to your dad and grandma, if you don't do as we say, your daughter is next."

Flores-Avila's credible testimony shows that the men who broke into her home knew who she was, and their invocation of the prior murders of Flores-Avila's family members shows that they sought her out in her new town because

she was the daughter of their former gang member. While the MS gang could have approached any mother with a baby to conceal drugs, they left the territory they controlled and entered rival gang territory to seek out an individual because of her father's former gang affiliation. Thus, Flores-Avila presented evidence sufficient to compel the conclusion that Flores-Avila's connection to her father was both "one central reason"—a nexus sufficient for asylum—and "a reason"—a nexus sufficient for withholding of removal—for the persecution she suffered. *See Romero v. Lynch*, 846 F.3d 351, 358 (9th Cir. 2017) (explaining that the withholding statute uses only "a reason" in contrast to the asylum statute which states "one central reason").

2. The BIA adopted the IJ's decision pursuant to *Matter of Burbano*, 20 I. & N. Dec. 872 (BIA 1994), including the IJ's finding as to whether El Salvador was unable or unwilling to control the MS gang members.[1] But, the IJ failed to consider "highly probative or potentially dispositive evidence" regarding the Salvadoran government's willingness and ability to control the MS gang's violence. *Antonio v. Garland*, 58 F.4th 1067, 1078–79 (9th Cir. 2023). As such, the decision "cannot stand." *Id.* (quoting *Cole v. Holder*, 659 F.3d 762, 771–72

---

[1] While Petitioners did not dedicate a section of their brief to this issue, they sufficiently raised the issue. Petitioners' brief recognizes that the "unable or unwilling" analysis formed one of the bases for the IJ's decision, acknowledges that standard as part of their burden, and explicitly argues that they have "shown [the] government's inability to protect individuals from gang violence."

(9th Cir. 2011)).

Flores-Avila testified that law enforcement and the gangs are "united," describing that she had previously witnessed law enforcement pretend to arrest gang members and subsequently release them. The IJ ignored this evidence of corruption, finding instead that Flores-Avila simply "has seen the police arrest people in the past who are suspected gang members." The country conditions evidence Flores-Avila submitted bolsters her evidence of corruption, explaining that "gangs are infiltrating the security forces in order to influence investigations against them," and that "[c]omplaints to the police about gang extortion are reportedly often relayed back to the gangs, which then exact severe retribution on the complainants." Moreover, the murder of Flores-Avila's grandmother, as she was cooperating with a police investigation into the gang, is further evidence of corruption, particularly because law enforcement attributed the murder to robbery even though her grandmother's possessions, money, and jewelry had not been taken.

Thus, although the IJ was obligated to consider the full record, including Petitioner's testimony and evidence of corruption, it failed to do so.[2]

_____

[2] The IJ's opinion generally states that "Exhibits 1 through 4 were admitted into evidence and considered by the Court in making this decision," and "the Court considered the testimony of the lead respondent." AR 72. But where there is "any indication that the [agency] did not consider all of the evidence before it," a

3.　　The agency's failure to consider the full record also requires remand of Petitioners' CAT claim. *See Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1089 (9th Cir. 2020) (holding CAT regulations require agency to consider all relevant evidence). The IJ denied CAT relief solely based upon its conclusion that Petitioners could not show government acquiescence.[3] *See* 8 C.F.R. § 1208.18(a)(1). But the same evidence that is relevant to the "unable or unwilling" analysis in the asylum and withholding of removal contexts is relevant to government acquiescence under CAT. *See Parada v. Sessions*, 902 F.3d 901, 916 (9th Cir. 2018) (holding that "[e]vidence showing widespread corruption of public officials" is "highly probative" as to government acquiescence).

We therefore vacate the BIA's determination that Petitioners are not eligible for asylum, withholding, and CAT relief and remand to the agency for further consideration of this claim.

**PETITION GRANTED and REMANDED for further proceedings.**

---

"catchall phrase" stating that the agency considered the full record "does not suffice." *Cole v. Holder*, 659 F.3d 762, 771–72 (9th Cir. 2011).

[3] The BIA purported to affirm based upon the IJ's conclusion that Petitioners failed to establish "mistreatment rising to the level of past torture" or a likelihood of future torture sufficient to merit CAT relief. However, the IJ made no factual findings with regard to the likelihood of future torture, and thus provided no basis for the BIA to affirm. The BIA abused its discretion in concluding otherwise, and so we cannot rely on its finding of no likelihood of future torture to deny the petition for review as to CAT.

*Flores-Avila, et al. v. Garland*, No. 22-1277
Bumatay, Circuit Judge, dissenting:

Because the majority relies on arguments never raised before our court to grant this petition for review, I respectfully dissent.

1. Keny Maria Flores-Avila and her daughter's asylum and withholding of removal claims fail for the simple reason that they failed to challenge the immigration judge's (IJ) and Board of Immigration Appeals' (BIA) conclusion that the government of El Salvador is not unable or unwilling to control gang violence. Ignoring this failure, the majority instead grants the petition and crafts Flores-Avila's arguments against the agency for her and her daughter. But, as the majority must agree, their opening brief makes *no arguments* that the agency erred in its "unable or unwilling" conclusion. Indeed, at oral argument, Flores-Avila's counsel admitted that the arguments were not raised in the opening brief. *See Lopez-Vasquez v. Holder*, 706 F.3d 1072, 1079–80 (9th Cir. 2013) (issues not specifically raised and argued in a party's opening brief are waived). Undeterred, the majority relies on one sentence describing the IJ's findings and another sentence reciting the legal elements of being a "refugee" in the opening brief. Needless to say, that's not sufficient to raise an argument.

Even if we were to review this argument, substantial evidence supports the agency's conclusion that the Salvadoran government is not unable or unwilling to control gang violence. Flores-Avila and her daughter have the burden of proving the

1

"unable or unwilling to control" element. *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010).

In our circuit, *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1066–67 (9th Cir. 2017), governs the factors for determining whether a government is unable or unwilling to control attackers when a petitioner failed to report the past abuse to the police, as here. Those factors are: (1) "demonstrating that a country's laws or customs effectively deprive the petitioner of any meaningful recourse to governmental protection," (2) describing "prior interactions with the authorities," (3) "showing that others have made reports of similar incidents to no avail," (4) "establishing that private persecution of a particular sort is widespread and well-known but not controlled by the government," or (5) "convincingly establishing that reporting would have been futile or would have subjected [the petitioner] to further abuse." *Id*. (simplified).

The IJ painstakingly went through the *Bringas-Rodriguez* factors and determined that Flores-Avila failed to show that El Salvador is unwilling or unable to protect her and her daughter. First, the IJ relied on the U.S. Department of State's 2018 El Salvador Human Rights Report to show El Salvador's efforts to combat gang violence. As the IJ concluded, the report "indicates that the Salvadoran government has been aggressively attempting to alleviate its gang and general crime problems in recent years." The report also shows that "El Salvador has a functioning

2

police force, court system, and prison system" and imprisoned almost 18,000 gang members.

Second, the IJ concluded that Flores-Avila did not have prior interactions with authorities to justify her perceptions that the government would not assist her and her daughter. On the contrary, after her father's murder, Flores-Avila said that the police investigated the incident and that her grandmother was pleased with the police investigation's progress. The same goes with her grandmother's murder. The police investigated the crime and even interviewed her.

Third, the IJ found that Flores-Avila failed to provide any evidence demonstrating that the police didn't respond to similar reports of crime. Neither Flores-Avila nor the majority contest this finding.

Fourth, while the 2018 country report shows that El Salvador suffers from widespread gang violence, the IJ found that the report reveals that the country is taking positive steps to stop it. *See Rahimzadeh v. Holder,* 613 F.3d 916, 923 (9th Cir. 2010) *abrogated on other grounds by Bringas-Rodriguez*, 850 F.3d at 1069–70 (looking to country reports to assess the likelihood that government officials would control the persecution). Indeed, the report details the arrest and conviction of numerous gang members for violent crimes. It also highlights that the government is undertaking "extraordinary measures" to reduce homicides.

Fifth, the IJ said that Flores-Avila failed to establish that reporting the crimes against her would have been futile or would have subjected her to further abuse. In one incident, masked men barged into Flores-Avila's home and demanded that she allow them to use her child as a drug courier. While horrific, she did not report the incident to the police. And it's pure speculation to argue that the police would not have investigated the incident or tried to protect her from these men.

Against this thorough analysis, the majority largely relies on Flores-Avila's speculative testimony of police corruption—based solely on her observations of police officers arresting gang members but later seeing them later "freely roaming around" and her uncorroborated beliefs on her grandmother's murder. This doesn't respect our role to defer to the agency unless the agency's conclusion is unsupported by substantial evidence. On a fair review of the record, "the evidence here falls short of compelling the conclusion that [Salvadoran] authorities would have been unable or unwilling to help" Flores-Avila or her daughter. *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1065 (9th Cir. 2020).

2. For the same reasons that the majority oversteps its role in the asylum and withholding claims, it also overreaches on the Convention Against Torture (CAT) claims. Once again, the record doesn't compel the conclusion that Salvadoran public officials would be "willfully blind" to Flores-Avila's or her daughter's torture at the hands of gang members. *See Del Cid Marroquin v. Lynch*, 823 F.3d 933, 937 (9th

4

Cir. 2016). As the IJ found, the 2018 country report demonstrates that El Salvador authorities enforce the laws against gang members as evidenced by the thousands and thousands of gang members in prison. Indeed, Flores-Avila acknowledged that she never had any problem with the police and that she witnessed the police arrest gang members. The majority also ignores BIA's dispositive ruling that she was not subject to past torture and that any fear of future torture is "merely speculative."

\* \* \*

While I understand the sympathy this court shows to Flores-Avila and her daughter, the law does not permit us to grant this petition. I respectfully dissent.