NOT FOR PUBLICATION

**FILED**

UNITED STATES COURT OF APPEALS

DEC 6 2024

FOR THE NINTH CIRCUIT

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

| | |
|---|---|
| GLEISON MUNIZ DE SOUZA; CLAIRE MARTINS DA SILVA MUNIZ; JOAO MARTINS MUNIZ SOUZA; EMANUELY MUNIZ MARTINS SILVA,<br><br>Petitioners,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br><br>Respondent. | No. 23-3726<br><br>Agency Nos.<br>A220-553-375<br>A220-553-376<br>A220-553-377<br>A220-553-378<br><br>MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted December 3, 2024[**]
San Francisco, California

Before: BENNETT, BRESS, and FORREST, Circuit Judges.

Petitioner Gleison Muniz De Souza ("De Souza"), a native and citizen of

Brazil, petitions for review of a decision of the Board of Immigration Appeals

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

("BIA") upholding the denial of his applications for asylum and withholding of removal by an immigration judge ("IJ").[1] We have jurisdiction under 8 U.S.C. § 1252(a). The BIA denied relief for two separate, dispositive reasons: (1) De Souza did not establish past or feared persecution on account of an imputed anti-gang political opinion (his alleged protected ground); and (2) De Souza did not establish that the Brazilian government was, or would be, unable or unwilling to protect him from the Primeiro Comando da Capital ("PCC") gang.[2] De Souza challenges both findings, which we review under the highly deferential substantial evidence standard. *See Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1016 (9th Cir. 2023) (applying the standard to the agency's no-nexus determination); *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064–65 (9th Cir. 2020) (applying the standard to the agency's determination that the government was unable or unwilling to protect the petitioner). Under that standard, the BIA's findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C.

---

[1] The BIA also upheld the IJ's denial of his claim for protection under the Convention Against Torture ("CAT"), but De Souza does not challenge the CAT denial. The other petitioners are De Souza's wife and their two children, who are derivative beneficiaries of only the asylum claim.

[2] For both asylum and withholding claims, a petitioner must prove a nexus between past or feared harm and a protected ground, *Rodriguez-Zuniga v. Garland*, 69 F.4th 1012, 1016 (9th Cir. 2023), and that the persecution is being committed "by forces that the government was unable or unwilling to control," *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064 (9th Cir. 2020) (quoting *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1062 (9th Cir. 2017) (en banc)); *id.* at 1065.

§ 1252(b)(4)(B).  We deny the petition.

1.    The record supports that the PCC did not threaten De Souza (and would not harm him in the future) based on a belief that De Souza held an anti-gang political opinion.  Rather, as the BIA reasonably concluded, the PCC persecuted De Souza based on only a "personal dispute"—i.e., in retaliation for him informing on a PCC member.  *See Soriano v. Holder*, 569 F.3d 1162, 1164–65 (9th Cir. 2009) (upholding the BIA's no-nexus determination when the "persecution stem[med] from the criminals' motive to retaliate against [petitioner] for informing on them," because such motive amounted to "[p]ersonal animosity . . . not political opinion"), *overruled on other grounds by Henriquez-Rivas v. Holder*, 707 F.3d 1081 (9th Cir. 2013) (en banc).

There is no evidence that De Souza expressed any anti-gang political opinion to anyone, let alone to the PCC.[3]  Instead, the evidence supports that the PCC persecuted De Souza for informing on one of its members.  De Souza testified that the gang persecuted him because he got one of the PCC's members "arrested" for "doing illegal things," and because he "betrayed one of their members" who "ended

---

[3] De Souza's opening brief claims, without any record citation, that he told a PCC member that he "opposed the sale of drugs by . . . the PCC group."  But the government responds that "at no point did De Souza express to [the PCC member] that he was opposed to the PCC," and the government offers supporting record cites. De Souza filed no reply brief.  Our independent review of the record uncovered no evidence supporting De Souza's claim that he told a PCC member that he opposed the sale of drugs by the gang.

3                                                23-3726

up in jail." The night following the PCC member's arrest, De Souza's store was vandalized and marked with "X9," which is code for "[s]nitch." This further supports the BIA's finding that the PCC persecuted De Souza for informing on one of its members. De Souza points to no evidence compelling a contrary result. He instead appears to argue that informing on a gang alone *is* anti-gang political expression. But that argument is unavailing under *Soriano*, in which we held that informing police about criminal activities by gang members was insufficient by itself to show an actual or imputed political opinion. 569 F.3d at 1164–65. De Souza's reliance on *Henriquez-Rivas* is also unpersuasive, as that case dealt with whether people who testified against gang members qualified as a protected "particular social group." 707 F.3d at 1083. The BIA found that De Souza waived his claims based on his proposed particular social groups, and De Souza does not challenge that determination on appeal.

2. The record further supports that De Souza failed to establish that the Brazilian government was, or would be, unable or unwilling to protect him from the PCC. As the BIA observed, the Brazilian police responded to De Souza's complaints about the PCC. When De Souza reported that his employee, a PCC member, made extortionate threats, the police showed up in ten minutes and arrested the employee after finding drugs in the employee's backpack. When De Souza expressed concern about people outside watching the arrest, an officer told him, "If

4                                                    23-3726

something happens, please call us again." The police also responded when the PCC attempted to kidnap De Souza's son. De Souza's contention that the police "took no action to investigate" the attempted kidnapping is belied by the record. De Souza himself testified that the police questioned people at the scene, including his son. His son, however, could not provide any details on the kidnappers or their vehicle. De Souza also claims that the police failed to protect him when the police warned him to "watch[] [his] back . . . and look for protection" after he reported the vandalism at his store, and when they stated they could not help him after he reported anonymous threatening calls and texts. But the BIA reasonably concluded that this did not show the police were unable or unwilling to protect De Souza, given that the police told him that they needed more details, such as names, to investigate (which De Souza could not provide) and that the police had been responsive in the past.

Finally, De Souza points to general country conditions evidence that the PCC is active throughout Brazil and that some officers collude with criminal groups like the PCC. But the country conditions evidence also shows that the Brazilian government is making efforts to subdue the PCC. Given the evidence that the police responded to De Souza's requests for help and acted when they had sufficient evidence, the mixed country conditions evidence does not compel a finding that the Brazilian government is unable or unwilling to protect De Souza from the PCC.

**PETITION DENIED.**