**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

| | |
|---|---|
| PETER DONATUS UDO,<br>*Petitioner*,<br><br>v.<br><br>MERRICK B. GARLAND, Attorney General,<br>*Respondent.* | No. 20-70078<br><br>Agency No.<br>A208-309-125<br><br><br>OPINION |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted November 18, 2021
San Francisco, California

Filed May 4, 2022

Before: Sidney R. Thomas and M. Margaret McKeown,
Circuit Judges, and Donald W. Molloy,[*] District Judge.

Opinion by Judge McKeown

---

[*] The Honorable Donald W. Molloy, United States District Judge for the District of Montana, sitting by designation.

# SUMMARY**

## Immigration

Granting in part, and denying in part, Peter Donatus Udo's petition for review of a decision of the Board of Immigration Appeals, and remanding, the panel held that the Board erred in affirming an immigration judge's frivolous asylum application determination and the denial of protection under the Convention Against Torture.

Udo asserted a fear of persecution or torture in Nigeria based on his status as a gay man, and the harm he suffered after being discovering having sex with his boyfriend in a hotel. The IJ found that Udo was not credible because he "misrepresented" the name of the hotel where he and his boyfriend were discovered and because Udo was often unresponsive and inconsistent in his testimony. As a result, the IJ found that Udo failed to establish that he is gay or that he was ever harmed in Nigeria for being a gay person. The IJ also found that Udo's asylum application was frivolous because he deliberately fabricated a material element of his asylum application—the location where Udo and his boyfriend were discovered.

Before this court, Udo did not challenge the agency's credibility determination or the denial of asylum relief. Instead, he argued that the agency (1) erred by failing to consider potentially dispositive evidence concerning his CAT claim; (2) violated due process in its CAT

---

** This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

determination; and (3) erred in concluding that he had filed a frivolous asylum application.

The panel agreed with Udo that the Board erred by failing to consider potentially dispositive evidence concerning his CAT claim. The panel noted that the Board did not mention at all an excommunication notice from the "Council of Traditional Rulers" of Udo's Nigerian community stating that he was subject to execution for being gay, and the Board made only fleeting reference to a collection of letters and affidavits from Udo's family members describing in detail the attacks Udo suffered, his escape from Nigeria, and the threats Udo and his family members received after his sexuality was publicly revealed. The panel wrote that this evidence was potentially dispositive of Udo's CAT claim because it provided the missing factual finding—that Udo was gay and persecuted on that basis. The panel wrote that Udo's adverse credibility determination was not necessarily a death knell to his CAT claim, and that because the evidence he submitted was potentially dispositive of his claim, the agency erred by failing to give "reasoned consideration" to it.

In light of its determination that the agency's denial of CAT relief could not stand, the panel did not reach, and therefore denied the petition as to, whether the agency's failure to consider the documentary evidence violated Udo's Fifth Amendment due process rights in addition to immigration regulations.

The panel also held that the Board erred in concluding that Udo had filed a frivolous asylum application, because any fabrication concerning the name of the hotel where Udo was discovered did not concern a material element of Udo's asylum claim. Acknowledging that the location where Udo's past persecution occurred could have been relevant to

the agency's credibility determination, the panel wrote that the location of the hotel was at best ancillary to the elements Udo needed to prove to succeed on his asylum claim.

## COUNSEL

David C. Casarrubias (argued), Alexandra V. Atencio, and Breana L. Burgos, Hanson Bridgett LLP, San Francisco, California, for Petitioner.

Sheri R. Glaser (argued), Trial Attorney; Jonathan Robbins, Senior Litigation Counsel; Brian Boynton, Acting Assistant Attorney General; Office of Immigration Litigation, Civil Division, United States Department of Justice, Washington, D.C.; for Respondent.

## OPINION

McKEOWN, Circuit Judge:

Peter Donatus Udo is a citizen of Nigeria who applied for asylum, withholding of removal, and relief under the Convention Against Torture ("CAT") in the United States on the grounds that he feared violence in Nigeria as a gay man. Specifically, the Council of Traditional Rulers of Udo's community in Nigeria decreed that he was subject to "public execution" because he was found "practicing homosexuality." Although the immigration judge ("IJ") and the Board of Immigration Appeals (the "BIA" or the "Board") denied relief on the grounds that Udo was not credible, the BIA failed to give reasoned consideration to key evidence that was independent of Udo's testimony, namely the Council's decree and a collection of letters and

affidavits supplied by Udo's family members. The BIA also erred in deeming Udo's asylum application frivolous because any fabrication was not of a material element of Udo's asylum claim.

## I.  Background

Before the IJ, Udo testified to the following:  Being gay is a crime in Nigeria punishable by over ten years in prison. Udo is gay.  In 2015, he and his boyfriend had a clandestine meeting at a Sheraton hotel in Ikot Ekpene, Nigeria.  In the early morning hours, a waiter delivering breakfast opened the door without knocking to find Udo and his boyfriend having sex.  The waiter screamed and called hotel security, which detained the couple and called a local "community security" group to report the incident.  The security group tied Udo and his boyfriend by their hands and legs, threatened to kill them for committing an "abomination," and took them away.  For the next six hours, the group beat the couple with sticks and metal rods, spit on them, threw sand in their eyes, and yelled anti-gay slurs.  The beating caused Udo to bleed and eventually scar.  Udo was taken to a detention center from which he escaped.  He then traveled to a distant town where he was treated for his injuries at a hospital with the help of a stranger.

After recovering, Udo contacted his mother, who told him that the Nigerian police had come looking for him at his home.  She also told him that the leaders of his village had asked her to turn in Udo because he had committed an abomination and should be put to death.  Udo's mother met him at a bus stop the next day, gave him clothes and money, and told him to flee.  Udo traveled to the United States.

Udo submitted documentary evidence to support his application.  Most important for this appeal are (1) the

"excommunication notice" from the "Council of Traditional Rulers" of Udo's Nigerian community stating that he is subject to execution for being gay, and (2) a collection of letters and affidavits from Udo's family members describing in detail the attacks Udo suffered after his discovery at the hotel, his escape from Nigeria following the incident, and the threats Udo and his family members received from Nigerian police and local security groups after his sexuality was publicly revealed.

On cross-examination, the government asked Udo the name of the hotel where he and his boyfriend were found together.  Udo testified that it was the Sheraton Hotel in Ikot Ekpene, Nigeria.  The government presented evidence that there was no Sheraton Hotel in Ikot Ekpene.  Udo explained that he referred to the "Sheraton Hotel" instead of the "Sinadee Hotel" because the Sheraton was a more recognizable landmark.  When the government asked Udo why he had lied about the name of the hotel, Udo testified that he was afraid.

The IJ found Udo not credible because Udo "misrepresented" the name of the hotel where he and his boyfriend were discovered and because Udo was often unresponsive and inconsistent in his testimony.  As a result, the IJ found that Udo "failed to establish that he is gay or that he was ever harmed in Nigeria for being a gay person" and denied Udo asylum, withholding, and CAT relief.  The IJ also found that Udo's asylum application was frivolous because he "deliberately fabricated [a] material element of his asylum application"—the location where Udo and his boyfriend were discovered.  The BIA adopted and affirmed the IJ's decision.

Udo presents us with three issues:  (1) whether we should remand Udo's CAT claim because the BIA failed to properly

consider potentially dispositive evidence; (2) whether the BIA violated Udo's due process rights in its CAT relief determination; and (3) whether the BIA erred in determining that Udo's asylum claim was frivolous. Where, as here, the Board adopts the IJ's decision citing *Matter of Burbano*, 20 I. & N. Dec. 872 (B.I.A. 1994) and provides its own review of the evidence and law, we review the decisions of both the BIA and the IJ. *Aguilar Fermin v. Barr*, 958 F.3d 887, 891 (9th Cir. 2020), *cert. denied*, 141 S. Ct. 664 (2020). We review the Board's "legal conclusions de novo and its factual findings for substantial evidence." *Bringas-Rodriguez v. Sessions*, 850 F.3d 1051, 1059 (9th Cir. 2017) (en banc) (citations omitted).

## II. The BIA erred when it failed to give reasoned consideration to potentially dispositive evidence related to Udo's CAT claim.

We grant Udo's petition for review of his CAT claim and remand that claim to the BIA. The Board failed to give reasoned consideration to the potentially dispositive evidence that Udo submitted, including the excommunication notice and letters and affidavits from Udo's family members.

To be eligible for CAT relief, Udo must establish that if removed to Nigeria, he would "more likely than not" be tortured. *Akosung v. Barr*, 970 F.3d 1095, 1104 (9th Cir. 2020) (quoting 8 C.F.R. § 1208.16(c)(2)). "Torture is an extreme form of cruel and inhuman treatment that either (1) is not lawfully sanctioned by that country or (2) is lawfully sanctioned by that country, but defeats the object and purpose of CAT." *Mairena v. Barr*, 917 F.3d 1119, 1125 (9th Cir. 2019) (quoting *Konou v. Holder*, 750 F.3d 1120, 1124 (9th Cir. 2014)). It is important to keep in mind that the CAT standard is "distinct" from that of asylum and

the two bases for relief "should not be conflated."**[1]** *Farah v. Ashcroft*, 348 F.3d 1153, 1157 (9th Cir. 2003). Udo's adverse credibility determination "is not necessarily a death knell to CAT protection" if other evidence in the record alone establishes that he is eligible for CAT relief. *Shrestha v. Holder*, 590 F.3d 1034, 1048–49 (9th Cir. 2010). In making its CAT determination, the agency must consider "all evidence relevant to the possibility of future torture." 8 C.F.R. § 1208.16(c)(3). "In particular, where potentially dispositive testimony and documentary evidence is submitted, the BIA must give *reasoned consideration* to that evidence." *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011) (emphasis added).

## A. The documentary evidence was potentially dispositive.

The agency predicated denial of Udo's CAT claim on the adverse credibility determination: Because Udo's testimony was not credible, the agency found that he "failed to establish that he is gay or that he was ever harmed in Nigeria for being a gay person." But this finding is not supported by substantial evidence. Instead, the "excommunication notice" combined with his family's letters and affidavits leave no doubt that Udo is gay and was subjected to violent attacks in Nigeria on the basis of his sexuality. This documentary evidence is "potentially dispositive" to his CAT claim. *Cole*, 659 F.3d at 772.

The "excommunication notice" clearly states that Udo was "caught practicing" prohibited sexual acts including "homosexuality, bisexual, trans-gender or any other related

---

**[1]** On appeal, Udo does not challenge the adverse credibility finding or the denial of asylum relief.

[] act"; he was "apprehended, detained for execution and he escaped"; and he is now subject to "public execution" as a result.  The notice was issued by the "Disciplinary Committee" of the "Council of Traditional Rulers" of the Ukana Community to Udo's family and signed by the Chairman of the Disciplinary Committee, the Secretary, and the Village Head of Ukana Ikot Otu.  A copy of the notice is included here.



## COUNCIL OF TRADITIONAL RULERS UKANA COMMUNITY.
## DISCIPLINARY COMMITTEE.

Traditional rulers secretariat,No 23 Ewet housing estate Ukana,Akwa Ibom State,Nigeria

### EX-COMMUNICATION NOTICE TO LATE MR DONATUS PETER UDO FAMILY

In accordance to our traditional code of conduct,Your son Peter Donatus Udo has committed an offense under section 2 ,paragraph c which states: That any citizen of this community found practicing homosexuality,bisexual,trans-gender or any other related sexual act is subjected to public execution.

On 16 April 2015, Your son was caught practicing this act and apprehended,detained for execution and he escaped.

This act violated our code of conduct bond every citizens of this community.

The disciplinary committed have resolved to expel and excommunicate your family members as followed;

Mrs Justina Donatus Udo
Anthony Donatus Udo
Donatus Donatus Udo
Agnes Donatus Udo
Theresa Donatus Udo
Cecelia Donatus Udo

You shall cease to be recognize as the citizen of this community effective from today being 24th day of April 2015 pending your son  PETER DONATUS UDO arrival for public execution in accordance to our law.

Signed

Okuku(Obong) Effiong Etim
Chairman Ukana Disciplanary committee

Obong Gilbert Umoren
Secretary.

Edidem John O. Asanga
Village Head Ukana Ikot Otu.

Corroborating this decree, Udo's family members submitted multiple letters and affidavits that detail the violence that Udo experienced in Nigeria after he was discovered with his boyfriend and support Udo's claim that he will more likely than not be tortured if he is returned. For example, Udo's mother submitted an affidavit stating that on April 16, 2015, Udo "was caught by the Ikot Ekpene Police Area command Headquarters, Nigeria for Homosexuality at SINADEE Hotel at No: 53 Aba Road, Ikot Ekpene, Akwa Ibom State, Nigeria," that "local police in Nigeria are on [his] trails," and that the police "have been raiding [her] house periodically thereby making life unpleasant, unsafe and unsecured." According to her affidavit, Udo's mother "was left with no other alternative than to use [her] entire resources to mobilize him to flee Nigeria for safety and protection."

Similarly, Udo's brother, Anthony Donatus Peter, wrote that Udo "was harmed, mistreated, tortured" by "a local security outfit for his perceived sexual orientation which is against culture and tradition and Nigerian law which prescribed death sentence and 14 years imprisonment" for the offense. Compounding the family's suffering, their home became "a surveillance point for this Vigilante group who want to kill [his] brother by all means." Anthony added that Udo's mother had "spent her last saving [sic] to sponsor [Udo's] trip to United States of America" because his family "never want him to return to Nigeria for his safety." Udo's sister, Agnes Donatus Peter, wrote that on April 23, 2015, "the police came to arrest [Udo] and fortunately he ran away" and "he doesn't commit any crime except homosexuality."

Had the agency accorded any weight to this evidence, it could have concluded at the very least that Udo is "gay [and]

that he was [] harmed in Nigeria for being a gay person"—
the missing factual finding upon which the agency
predicated its denial of CAT relief.   Thus, the
excommunication letter and the letters and affidavits from
his family members are "potentially dispositive."   *Cole*,
659 F.3d at 764.

## B.  The agency failed to give reasoned consideration to potentially dispositive evidence.

Confronted with this potentially dispositive evidence,
the agency failed to give it reasoned consideration. *Cole*,
659 F.3d at 773.  Remarkably, the BIA did not reference the
excommunication notice at all in its five-page order.  The
BIA mentioned Udo's mother's affidavit only once in its
asylum frivolousness determination, and did not otherwise
mention Udo's family's letters and affidavits.   The IJ
acknowledged the documentary evidence in passing in her
decision, but failed to mention it at all in her discussion of
Udo's CAT claim.

In the face of persuasive evidence, the agency's
dismissive, fleeting reference to that evidence is insufficient
and falls far short of the agency's obligation to give
"reasoned consideration" to the evidence.  This deficiency is
underscored where, as here, "there is any indication that the
BIA did not consider all of the evidence before it."   *Cole*,
659 F.3d at 771–72.  The key factual issues, according to the
BIA, related to whether Udo was gay and whether he was
detained, threatened with death, and beaten for his perceived
sexuality.  Udo's documentary evidence is highly probative
of both issues and contradicts the agency's ultimate
conclusion—a strong indication that the agency "did not
consider all of the evidence before it."  *Id*.  This is especially
true here because there is a "significant and material
disconnect" between what the evidence says and the

agency's "conclusions regarding [Udo's] CAT claim." *Parada v. Sessions*, 902 F.3d 901, 915–16 (9th Cir. 2018) (citing *Cole*, 659 F.3d at 771–72); *see also Etemadi v. Garland*, 12 F.4th 1013, 1025 (9th Cir. 2021).

The cases cited by the Government are not to the contrary. In *Manes v. Sessions*, unlike here, there was no indication that the BIA had failed to consider all the evidence, not in the least because the objective evidence Manes presented—country conditions reports—had little probative value for his particular CAT claim. 875 F.3d 1261, 1265 (9th Cir. 2017). And in contrast to Udo's case, in *Najmabadi v. Holder*, there was "no indication that the Board failed to credit" the truth of an affidavit's factual allegations. 597 F.3d 983, 990 (9th Cir. 2010). The Government's references do not undermine our conclusion in any way.

Because there is a strong "indication that the BIA did not consider all of the evidence before it . . . the decision cannot stand." *Etemadi*, 12 F.4th at 1026 (quoting *Cole*, 659 F.3d at 771–72).[2]

## III.    Udo's Asylum Claim was not Frivolous.

The consequences of filing a frivolous asylum application are severe. Noncitizens found to have knowingly filed such applications are "permanently

---

[2] We do not reach whether the agency's failure to consider the documentary evidence violated Udo's Fifth Amendment due process rights in addition to immigration regulations. *See Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936) ("[Courts] will not pass upon a constitutional question although properly presented by the record, if there is also present some other ground upon which the case may be disposed of.").

ineligible for any benefits under [the Immigration and Nationality Act]" including asylum. 8 U.S.C. § 1158(d)(6). To find an asylum application frivolous, the agency must make a specific finding that an alien "deliberately fabricated" a "material element" of the application. 8 C.F.R. § 208.20; *see also In re Y–L–,* 24 I. & N. Dec. 151, 162 n.1 (B.I.A. 2007). Whether a fabrication encompassed material elements of a claim is a mixed question of fact and law that we review de novo. *See Khadka v. Holder*, 618 F.3d 996, 1002 (9th Cir. 2010).

The BIA determined that Udo had deliberately fabricated a "material element" of his asylum application, "namely, the location of where his alleged past persecution occurred." On this basis, the BIA found Udo's asylum application to be frivolous. We disagree.

The name of the hotel where Udo and his boyfriend were allegedly caught having sex is not a "material element" of Udo's asylum application. We evaluate whether a given aspect of a petitioner's asylum application was a "material element" of that application by reference to the meaning of "element," i.e.,"[a] constituent part of a claim that must be proved for the claim to succeed." *Id.* at 1004 (quoting *Element*, *Black's Law Dictionary* (9th ed. 2009)). For Udo's asylum claim to succeed, he must prove that he "is unable or unwilling to return to his home country because of a well-founded fear of future persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Bringas-Rodriguez*, 850 F.3d at 1062 (quoting *Navas v. INS*, 217 F.3d 646, 654 (9th Cir. 2000)). Because he predicates his fear of future persecution on allegations of past persecution, Udo "has the burden of establishing that (1) his treatment rises to the level of persecution; (2) the persecution was on account of one or

more protected grounds; and (3) the persecution was committed by the government, or by forces that the government was unable or unwilling to control." *Guo v. Sessions*, 897 F.3d 1208, 1213 (9th Cir. 2018) (quoting *Baghdasaryan v. Holder*, 592 F.3d 1018, 1023 (9th Cir. 2010)).

We acknowledge that the location where Udo's past persecution occurred, be it the Sheraton Hotel or the Sinadee Hotel, could be relevant to the agency's credibility determination.  However, the location is at best ancillary to these "constituent part[s] . . . that must be proved for [Udo's asylum application] to succeed," and is certainly not a "material element" of his asylum claim.  *Khadka*, 618 F.3d at 1004.  We reverse the agency's determination that Udo's asylum application was frivolous.

In doing so, we decline the Government's invitation to import the Supreme Court's framework for assessing materiality from judicial denaturalization proceedings brought under 8 U.S.C. § 1451(a), instead of following the Ninth Circuit's framework in *Khadka*, which directly addressed a frivolousness finding in the asylum context. Because the Government's proposed approach stems from a different form of proceeding under a different statutory framework, we follow the Ninth Circuit standard.

## IV.    Conclusion

We **GRANT** Udo's petition for review as to his CAT claim and as to the agency's frivolousness determination. We **DENY** Udo's petition for review as to his due process claim.  We **REMAND** this case to the BIA.  Udo is awarded his costs on appeal.