

FILED

**NOT FOR PUBLICATION**

APR 3 2025

UNITED STATES COURT OF APPEALS

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| JULIO CESAR UQUICHE-NAHUI; MIRIAM JUDITH GONZALES-BONIFACIO; J.E.U.G., <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 24-2960 <br><br> Agency Nos. <br> A240-839-508 <br> A240-839-509 <br> A240-839-510 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Submitted March 6, 2025[**]
Pasadena, California

Before: TALLMAN, IKUTA, and CHRISTEN, Circuit Judges.
Partial Concurrence and Partial Dissent by Judge CHRISTEN.

Julio Cesar Uquiche-Nahui, Miriam Judith Gonzales-Bonifacio, and

J.E.U.G., natives and citizens of Peru, petition for review of an order from the

Board of Immigration Appeals (BIA) dismissing their appeal of a final order of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

[**] The panel unanimously concludes this case is suitable for decision without oral argument. *See* Fed. R. App. P. 34(a)(2).

removal issued by an immigration judge (IJ).  We have jurisdiction under 8 U.S.C. § 1252, and we deny the petition for review.

Substantial evidence supports the BIA's ruling that petitioners did not qualify for asylum or withholding of removal.  The BIA properly determined that any harm Uquiche-Nahui may have suffered, even in the aggregate, did not rise to the level of past persecution.  *See Sharma v. Garland*, 9 F.4th 1052, 1060 (9th Cir. 2021).  Substantial evidence also supports the BIA's holding that petitioners lacked an objectively reasonable fear of future persecution, premised on either a pattern or practice of persecution against indigenous Peruvians, *see Wakkary v. Holder*, 558 F.3d 1049, 1061–62 (9th Cir. 2009), or that Uquiche-Nahui would face an individualized risk of being singled out for persecution as a member of a "disfavored group," *see id.* at 1066.

Substantial evidence also supports the BIA's ruling that petitioners were not entitled to relief under the Convention Against Torture (CAT).  We apply a presumption that the BIA reviewed the record and "need not expressly discuss" evidence that "is neither 'highly probative [n]or potentially dispositive'" with respect to the CAT standard.  *Hernandez v. Garland*, 52 F.4th 757, 771 (9th Cir. 2022) (quoting *Castillo v. Barr*, 980 F.3d 1278, 1283 (9th Cir. 2020)).  Here, Uquiche-Nahui's evidence does not rebut the presumption.  The record shows that

2

a single gang member, Carlos Alberto Mejia Mieses, threatened Uquiche-Nahui several times, but there was no record evidence that Mejia caused any physical harm to Uquiche-Nahui or his family. Moreover, Uquiche-Nahui's parents and siblings remain unharmed in Peru. Uquiche-Nahui points to his testimony that a police officer who took his report warned him that Mejia had never been prosecuted for assault because witnesses disappeared, and that Mejia subsequently texted him that the police told him that Uquiche-Nahui had made a report against him and he would murder Uquiche-Nahui, his wife, and son so they would not testify against him.

This testimony does not rebut the presumption because it is not highly probative or potentially dispositive of Uquiche-Nahui's claim that he will more likely than not be tortured if removed to Peru or that the Peruvian government would consent or acquiesce to Uquiche-Nahui's torture. Contrary to the dissent, "the government itself," did not inform Uquiche-Nahui that it had informed Mejia of the police report; rather, the source of this information was Mejia himself, whose credibility is unknown. Moreover, "the existence of past torture is ordinarily the principal factor on which we rely" in considering whether an alien will face future torture, *Edu v. Holder*, 624 F.3d 1137, 1145 (9th Cir. 2010) (internal quotation marks omitted), but threats unaccompanied by any physical

violence are generally not highly probative or dispositive in determining whether an alien is entitled to CAT relief. *See, e.g.*, *Sharma*, 9 F.4th at 1062, 1067 (holding that because the BIA could reasonably conclude that petitioner's past harm, including threats, did not rise to the level of persecution, "it necessarily falls short of the definition of torture"); *see also Garcia v. Wilkinson*, 988 F.3d 1136, 1148 (9th Cir. 2021) (holding that prior threats, where the alien was never physically harmed, do not compel the conclusion that an alien would more likely than not be tortured if removed). Rather, evidence we have determined to be highly probative or dispositive is far more significant than Uquiche-Nahui's testimony. *Contra Udo v. Garland*, 32 F.4th 1198, 1201, 1203–05 (9th Cir. 2022) (holding that evidence that the petitioner was subject to execution for being gay was potentially dispositive); *Diaz-Reynoso v. Barr*, 968 F.3d 1070, 1089–90 (9th Cir. 2020) (holding that evidence that the petitioner informed two authority figures of her abuse but received no help was potentially dispositive regarding governmental acquiescence to the possibility of future torture). Therefore, substantial evidence supports the BIA's ruling that the harm did not constitute past torture or make it more likely than not that Uquiche-Nahui would face future torture if he returned to Peru.

**PETITION DENIED.**

4

*Uquiche-Nahui, et al. v. Bondi,* No. 24-2960
CHRISTEN, Circuit Judge, concurring in part, dissenting in part:

I respectfully dissent from the court's decision to deny the petition for review of petitioner's CAT claim. The BIA clearly overlooked credible probative evidence that strongly supported Uquiche-Nahui's contention that he will be tortured upon his return to Peru with the acquiescence of the Peruvian government. I would grant the petition with respect to petitioner's CAT claim and remand to the BIA for further consideration.

"Where the BIA does not consider all the evidence before it, either by misstating the record or *failing to mention highly probative or potentially dispositive evidence*, its decision is legal error and cannot stand." *Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (citation and quotation marks omitted) (alterations accepted) (emphasis added). The IJ found Uquiche-Nahui credible. The BIA did not disturb that ruling, and the government does not challenge it on appeal. We may not substitute the IJ's credibility determination with our own and thus accept Uquiche-Nahui's testimony as true. *De Leon v. Garland*, 51 F.4th 992, 1003 (9th Cir. 2022).

Uquiche-Nahui recounted that: (1) Mejia, a gang member, assaulted and threatened to kill him; (2) the police initially attempted to dissuade Uquiche-Nahui from filing a report against Mejia; (3) after Uquiche-Nahui's report was accepted at a second police station, officers there explained that Mejia had not been prosecuted

1

in the past "due to the witnesses disappearing"; and (4) two days after lodging his report with the police, Uquiche-Nahui received another text message from Mejia. Mejia's text informed Uquiche-Nahui that the police had told him about the police report, and Mejia threatened to kill Uquiche-Nahui and his family "so that [they] could not testify against him." Mejia's message and threats are consistent with the police officers' explanation that Mejia had not been prosecuted in the past because the witnesses against him had disappeared.

In deciding that Uquiche-Nahui failed to show acquiescence, the BIA erroneously focused on his testimony that the police initially refused to accept his report. The BIA entirely missed the most salient evidence: *after* the police finally accepted the report, the police tipped off Mejia and prompted his threat to kill Uquiche-Nahui's entire family. The majority excuses the BIA's failure to address this aspect of Uquiche-Nahui's testimony by holding that it is not highly probative or potentially dispositive. In reaching this conclusion, the majority relies on the proposition that death threats alone are not enough to constitute torture and decides that the BIA was free to disregard Uquiche-Nahui's evidence because it was not highly probative of acquiescence or the likelihood of future torture.

But it is hard to imagine evidence of future torture that would be *more* probative or reliable. The evidence is probative because the police officers' warning established that Mejia actually followed through on his earlier threats and

2

"disappeared" other witnesses.  It is reliable because it comes from the government itself.[1]

The BIA erred when it held that Uquiche-Nahui failed to show acquiescence. "Acquiescence of a public official requires that the public official, prior to the activity constituting torture, have awareness of such activity and thereafter breach his or her legal responsibility to intervene to prevent such activity."  8 C.F.R. § 208.18(a)(7).  Uquiche-Nahui's uncontroverted testimony demonstrates that members of the Peruvian National Police were well aware of Mejia's actions constituting torture and affirmatively breached their duty to prevent it—not merely by looking the other way, but by *informing* Mejia of Uquiche-Nahui's report.  We accept these uncontroverted facts as true because they are based on Uquiche-Nahui's credible testimony.  *See De Leon*, 51 F.4th at 1000–02 (holding the IJ erred when it found a petitioner credible but then discounted his testimony that his attackers were police officers as "speculation" despite his corroborated testimony).

---

[1] The majority's contention that "the government itself" was not the source of this evidence is mistaken.  The IJ found that Uquiche-Nahui was a credible witness, and he testified that the police officers —the government itself — informed him that other witnesses against Mejia had been "disappeared" before Mejia could be prosecuted.  The evidence that Mejia learned about the police report from the police does not depend upon Mejia's credibility. Strong and uncontradicted circumstantial evidence shows that, just two days after petitioner reported Mejia to the police, Mejia knew about the police report.  Speculation that someone *other* than the police tipped off Mejia is not supported by the record.

We have never held that a government action that facilitates a persecutor's threats falls short of satisfying the need to show government acquiescence. Notably, the State Department Country Conditions Report also corroborates Uquiche-Nahui's testimony. It acknowledges "credible reports of . . . serious government corruption" in Peru, and observes that despite the Peruvian government's efforts, "corruption and a perception of impunity remained prevalent."

The IJ erred when it dismissed Uquiche-Nahui's fears of future torture at the hands of Mejia as "speculative." The BIA erred when it failed to mention Uquiche-Nahui's credible, highly probative evidence of the likelihood of future torture and also erred when it ruled that he failed to show acquiescence. I respectfully dissent from the majority's decision to deny the petition for review of petitioner's CAT claim.

I concur in my colleagues' decision to deny the petition with respect to petitioners' asylum and withholding claims. Substantial evidence supports the BIA's conclusions that Uquiche-Nahui did not suffer past harm that rose to the level of persecution, and that the petitioners lacked an objectively reasonable fear of future persecution based on either a pattern or practice of persecution or membership in a disfavored group. Before the BIA, the section of petitioner's brief addressing asylum and withholding did not argue that petitioner had an

4

objectively reasonable fear of future persecution based on the Peruvian National Police informing Mejia that Uquiche-Nahui had reported his crimes. *See Flores Molina*, 37 F.4th at 638 (remanding to determine whether credible death threats were sufficient to support a well-founded fear of future persecution). Because petitioner failed to exhaust this argument as a basis for the asylum and withholding claims, I concur in the majority's decision to deny relief on these two claims. *Suate-Orellana v. Garland*, 101 F.4th 624, 629 (9th Cir. 2024).