NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| CARLOS MANO MARTINEZ-ORTIZ; CLAUDIA CAROLINA CHACHAGUA-MAYE; JAQUELINE MARTINEZ-CHACHAGUA, <br><br> Petitioners, <br><br> v. <br><br> PAMELA BONDI, Attorney General, <br><br> Respondent. | No. 24-727 <br><br> Agency Nos. <br> A216-656-154 <br> A216-656-155 <br> A216-656-156 <br><br> MEMORANDUM[*] |

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted March 4, 2025
San Francisco, California

Before: WARDLAW, PAEZ, and LEE, Circuit Judges.
Partial Dissent by Judge LEE.

Carlos Martinez-Ortiz, his wife Claudia Chachagua-Maye, and their minor

daughter, natives and citizens of El Salvador, petition for review of a decision by

the Board of Immigration Appeals (BIA) dismissing their appeal from an order of

---

[*] This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

an Immigration Judge (IJ) denying their claims for asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

Typically, our review "is limited to the BIA's decision, except to the extent that the IJ's opinion is expressly adopted." *Shrestha v. Holder*, 590 F.3d 1034, 1039 (9th Cir. 2010). But where, as here, the BIA states that its review is de novo but its "analysis on the relevant issues is confined to a simple statement of a conclusion, we also look to the IJ's oral decision as a guide to what lay behind the BIA's conclusion." *See id*. (cleaned up). "We review factual findings for substantial evidence." *Mohammed v. Gonzales*, 400 F.3d 785, 791 (9th Cir. 2005). "Questions of law, including claims of due process violations due to ineffective assistance, we review de novo." *Id*. at 791-92. Exercising our jurisdiction under 8 U.S.C. § 1252(a), we grant the petition in part and deny it in part.[1]

1. "Where the [agency] does not consider all the evidence before it, either by 'misstating the record [or] failing to mention highly probative or potentially dispositive evidence,' its decision is legal error and 'cannot stand.'" *See Flores Molina v. Garland*, 37 F.4th 626, 632 (9th Cir. 2022) (second alteration in original)

---

[1] The government argues that Petitioners waived review of the agency's nexus finding, unable or unwilling finding, denial of CAT relief, and rejection of their ineffective assistance of counsel claim by failing to address these issues in their opening brief with sufficient specificity. While the opening brief leaves much to be desired, these issues were "sufficiently presented to permit our review." *See Akosung v. Barr*, 970 F.3d 1095, 1104 (9th Cir. 2020).

(quoting *Cole v. Holder*, 659 F.3d 762, 772 (9th Cir. 2011)). As we discuss below, that is the case here. We therefore remand Petitioners' asylum claim.

First, in finding that Petitioners had not established a well-founded fear of future persecution, the agency ignored potentially dispositive evidence contextualizing Petitioners' specific fears that they will be murdered by a gang if removed to El Salvador. *See id.* at 637-38. Petitioners offered extensive evidence showing that gangs in El Salvador perpetrate pervasive crime and enforce a "system of terror" by retaliating against witnesses who cooperate with the authorities through threats, attacks, and killings. Record evidence identifying the hallmarks of Salvadoran gang crime corroborates the objective reasonableness of Petitioners' belief that the individuals who robbed them were gang-affiliated, as well as their fear that the gang will target them because Martinez-Ortiz reported the crime to police and appeared in court as a witness against the assailants.[2]

Additionally, the agency ignored highly probative evidence showing that fleeing gang threats to a new location in El Salvador often does not confer safety, in part because gangs use "sophisticated communications network[s]" to operate

---

[2] The IJ identified certain inconsistencies between Martinez-Ortiz's testimony, his I-589 declaration, and police records, but declined to "make an adverse credibility finding." The BIA read the IJ's decision as "[finding] the lead respondent credible." This appears to amount to an express credibility finding. *Cf. Garland v. Ming Dai*, 593 U.S. 357, 373 (2021). In any event, the evidence was consistent that Martinez-Ortiz appeared in court as a witness and his identity was exposed to the defendants.

country wide. Likewise, the agency's finding that "no evidence in the record show[s] that any geographical or economic situations would prevent [Petitioners] from relocating safely in El Salvador" misstates the record, which includes evidence that internal relocation is both dangerous and unrealistic, especially for low-income families like Petitioners. Lastly, the continued presence of Petitioners' family members in El Salvador does not undercut their well-founded fear because those family members are not similarly situated to Petitioners. *See Kumar v. Gonzales*, 444 F.3d 1043, 1055 (9th Cir. 2006). Only Martinez-Ortiz, Chachagua-Maye, and their daughter were targeted for the robbery and subsequent threat, and the testimony was specific that the three of them, not other members of their family, are recognizable as a family unit.

Second, the agency rejected the cognizability of the particular social group (PSG) "Salvadoran witnesses of organized crime who appeared in court and offered written or verbal testimony," but "failed to consider significant evidence that Salvadoran society recognizes the unique vulnerability" of that group. *See Henriquez-Rivas v. Holder*, 707 F.3d 1081, 1092 (9th Cir. 2013) (en banc). The administrative record shows that the agency gave no consideration to Petitioners' evidence that El Salvador operates a (limited) witness protection program, and such evidence is potentially dispositive of social distinction. *Id.* at 1093. Similarly, the agency's rejection of Petitioners' nuclear family based PSG is

24-727

contradicted by the record and the law. *See Parada v. Sessions*, 902 F.3d 901, 910 (9th Cir. 2018) (reiterating that "the family remains the quintessential particular social group"). Petitioners' testimony that they are known as a family unit because they ran a business together in El Salvador was reinforced by evidence that such family businesses "frequently contribute to the recognizability of families in Salvadoran communities."

Third, the agency's finding that there was zero evidence of a protected motive for the feared reprisals is belied by the record. The factual circumstances surrounding the nonverbal threat Petitioners experienced, as bolstered by the country conditions evidence, support that Martinez-Ortiz's appearance in court was "one central reason" for the threat. *See Madrigal v. Holder*, 716 F.3d 499, 506 (9th Cir. 2013).

Fourth, in analyzing whether the government of El Salvador is unable or unwilling to protect Petitioners, the agency "was required to evaluate all relevant evidence in the record," but its "extreme selectivity in using the [country conditions] evidence belies any attempt to do so." *Davila v. Barr*, 968 F.3d 1136, 1143 (9th Cir. 2020); *see also Madrigal*, 716 F.3d at 506.

Although the government's response to the robbery shows an ability to control those four assailants, the agency disregarded significant evidence that the government is unable to control the larger criminal organization Petitioners fear.

The agency relied on evidence that El Salvador has "recently shown some progress in implementing gang-violence prevention strategies," but the record as a whole does not demonstrate that such efforts have actually improved circumstances on the ground. For example, in March 2022, just months before the IJ ordered Petitioners removed, one gang murdered almost ninety people in three days. The killing spree was allegedly retaliation for the government's breach of a corrupt pact, under which gang leaders agreed to "keep the murder rate down" in exchange for various law enforcement concessions.

Petitioners' own experiences also cast doubt on the government's ability and willingness to protect them from future attacks. Petitioners are vulnerable to gang retaliation in part due to the government's unwillingness to protect Martinez-Ortiz as an in-court witness. The agency faulted Petitioners for not reporting the threat they subsequently received, but ignored that such a report would have been futile. *See Davila*, 968 F.3d at 1143. The government had already denied Martinez-Ortiz's request for in-court witness protections, and the record shows that there are no post-trial witness protections in El Salvador.

In sum, the IJ did not meet her obligation to consider all relevant evidence presented, and the BIA's unreasoned affirmance did not correct the error. The evidence the agency avoided was potentially dispositive of each element of Petitioners' asylum claim, so the denial "cannot stand." *See Cole*, 659 F.3d at 772.

2.  Remand of Petitioners' withholding of removal claim is required because the agency held that the claim "necessarily" failed based on its erroneous denial of asylum.  *See Flores Molina*, 37 F.4th at 638.

3.  We must also remand Petitioners' CAT claim.  Just as the agency legally erred in rejecting Petitioners' well-founded fear "by failing to examine relevant evidence, it repeated the error in rejecting [their] CAT claim."  *Id.* at 639; 8 C.F.R. § 1208.16(c)(3).  In finding that Petitioners would not "more likely than not" suffer torture in El Salvador with the consent or acquiescence of the government, the agency again cherrypicked evidence at the exclusion of other, highly probative evidence, resulting in a "significant and material disconnect between what the evidence says and the agency's conclusions."  *Udo v. Garland*, 32 F.4th 1198, 1205 (9th Cir. 2022) (internal quotation marks omitted).

4.  We deny the petition as to Petitioners' due process claims because their rights were not violated.  First, we agree with the BIA that Petitioners did not show they were prejudiced by their prior counsel's performance.  *See United States v. Lopez-Chavez*, 757 F.3d 1033, 1041 (9th Cir. 2014).  Second, even assuming the party presentation principle expounded in *United States v. Sineneng-Smith* constrains the BIA, the BIA did not err by affirming the IJ's denial of Petitioners' claims for relief even though Petitioners' brief only argued ineffective assistance of counsel.  590 U.S. 371 (2020).  Petitioners' notice of appeal and accompanying

statement sought the BIA's review of the IJ's merits decision, and the BIA was obligated to address the arguments before it. *See Sagaydak v. Gonzales*, 405 F.3d 1035, 1040 (9th Cir. 2005).

5. In sum, we grant the petition as to Petitioners' asylum, withholding, and CAT claims, and remand to the BIA for further proceedings consistent with this disposition. We deny the petition as to their due process claims.

**PETITION GRANTED IN PART; DENIED IN PART; REMANDED.**

The parties shall bear their own costs on appeal.

LEE, Circuit Judge, dissenting in part:



FILED

MAY 21 2025

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

If a reasonable factfinder could have reached the result the agency reached, we must uphold the agency's decision. *Singh v. I.N.S.*, 134 F.3d 962, 970 (9th Cir. 1998). Given this deference we owe to the agency, I would deny the petition in full.[1]

A petitioner seeking asylum must show that he is "unable or unwilling" to return to his home country "because of a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." *Velasquez-Gaspar v. Barr*, 976 F.3d 1062, 1064 (9th Cir. 2020). Further, "the persecution must have been 'committed by the government' or, as relevant here, 'by forces that the government was unable or unwilling to control.'" *Id.*

Here, the evidence falls short of "compelling the conclusion" that authorities in El Salvador were unable or unwilling to protect Carlos Martinez-Ortiz and his family. *Id.* at 1065. Substantial evidence also supports the agency's conclusion that he failed to show a likelihood of torture "by or with the acquiescence of public officials," as is required under the Convention Against Torture. *Id.* at 1065.

Martinez-Ortiz testified that he fears he will be persecuted and/or tortured if removed to El Salvador because he was robbed at gunpoint by suspected gang members, appeared in court as a witness against them, and later received what he

---

[1] I agree with the majority that Petitioners failed to establish a due process violation.

1

believed was a retaliatory death threat. He testified that after dropping his wife off at work, four men, one of whom was a teenager, approached him and his daughter. The teenager pulled out a gun, pointed it at Martinez-Ortiz's daughter, and demanded Martinez-Ortiz hand over his phone. After Martinez-Ortiz surrendered the phone, his assailants ran to a nearby car but he was able to pursue them and flag down police. The police apprehended all four of Martinez-Ortiz's assailants.

In prosecuting Martinez-Ortiz's assailants, officials summoned Martinez-Ortiz to testify in court. Fearing his assailants would seek revenge if he testified against them, Martinez-Ortiz asked the government to conceal his identity. The prosecutor's office denied the request. Following the hearing Martinez-Ortiz attended, all three adult assailants were jailed. The teenager was released on probation because he was a minor.

About one week after the hearing, a car pulled up next to Martinez-Ortiz while he was on his motorcycle. The individuals in the car made a threatening hand gesture that Martinez-Ortiz interpreted to mean "you will pay." They started to follow him, but he managed to lose them in traffic. He could not see the faces of the people who threatened him but believed they were part of the same gang as the men who robbed him. He did not report the threat to the authorities because they had denied his request to conceal his identity in court.

Such evidence falls short of compelling the conclusion that authorities in El Salvador would be unable or unwilling to protect Martinez-Ortiz and his family. *See Velasquez-Gaspar*, 976 F.3d at 1064. While the prosecutors refused Martinez-Ortiz's request to have his identity concealed in court, the police arrested all four of his assailants, prosecuted them, and jailed them (except for the underaged assailant). The agency's decision was thus supported by substantial evidence. Furthermore, nothing in the record compels the conclusion that, had Martinez-Ortiz reported to the police that others had threatened him after he appeared in court, the police would not have similarly pursued those men for that act.

Nor do the country conditions reports compel the conclusion that officials are unable or unwilling to protect him. Some reports indicate that witnesses of gang crimes who cooperate with law enforcement are targeted for retribution. Other reports, as the majority acknowledges, indicate that there has been "progress in implementing gang-violence prevention strategies." Given this mixed evidence, one cannot conclude that the record compels a conclusion other than that reached by the agency.

I respectfully dissent in part.